FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUN 15 PM 1: 55

LORETTA G. WHYTE
      CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KUNTA GABLE | CIVIL ACTION |
| VERSUS | NO. 00-3515 |
| BURL CAIN, WARDEN | SECTION "A" |

## MEMORANDUM OPINION AND ORDER
## DENYING PETITIONER'S §2254 APPLICATION AND
## DISMISSING HIS FEDERAL HABEAS CLAIMS AS TIME-BARRED

Before the Court is petitioner's application for post-conviction relief filed pursuant to 28 U.S.C. § 2254 challenging his conviction on the basis of the trial court's jury instructions on the law of principals and jury instructions regarding the required number of votes to reach a verdict. In its formal response to petitioner's application, the State submits that although Gable has exhausted his state court remedies in connection with his federal habeas claims, his federal application for § 2254 relief is time-barred since it was not filed within a year consistent with the requirements of Title 28, United States Code, Section 2244(d), as Amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132m 110 Stat. 1220, which became effective on April 24, 1996 and governs the subject federal application. The petitioner has filed no response to the State February 5, 2001 Response to his federal habeas application seeking dismissal of such application on the basis of the AEDPA's one-year limitations period.

DATE OF ENTRY
JUN 1 8 2001

1

**BACKGROUND**

Petitioner, Kunta Gable, is a Louisiana State prisoner currently serving a life sentence[1] at the Louisiana State Penitentiary, Angola, Louisiana, pursuant to his March 1, 1996 conviction for the second degree murder of Rondell Santinac in violation of La. R.S. 14:30.1[2]  On October 20, 1994, petitioner was indicted, along with co-defendants, Bernell Juluke and Leroy Nelson for violation of La. R. S. 14:30 (*i.e.*, first degree murder).[3]

On May 17, 1996, a formal Motion and Order of Appeal was filed on behalf of petitioner, which appeal the state trial court ordered returnable on June 25, 1996 and noted that the assignment

---

[1] *See* State Court Case Process Minutes dated Friday, April 26, 1996 in *See* State Court Case Process Minutes dated Friday, March 1, 1996 in *State of Louisiana v. Kunta Gable, et al*, Case No.372-656"B" on the Docket of the Criminal District Court for the Parish of Orleans, noting that the jury returned a verdict of guilty of second degree murder against Kunta Gable, among others, on the aforesaid date at 11:30 a.m., noting that petitioner's Motion for New Trial was denied and that the defendants, including Kunta Gable, were sentenced to life imprisonment in the custody of the Louisiana's Department of Corrections without the benefit of probation, parole or suspension of sentence, following which counsel for each of the defendants, including Kunta Gable, orally made a motion for appeal to be supplemented in writing [State Record, Vol. 4 of 6]; and Court Minutes dated April 26, 1996 filed in the aforesaid record noting that Kunta E Gable was convicted of violation of La. R.S. 14:30.1 and sentenced on April 26, 1996 to life imprisonment without benefits [State Record, Vol. 6 of 6].

[2] *See* State Court Case Process Minutes dated Friday, March 1, 1996 in *State of Louisiana v. Kunta Gable, et al*, Case No.372-656"B" on the Docket of the Criminal District Court for the Parish of Orleans, noting that the jury returned a verdict of guilty of second degree murder against Kunta Gable, among others, on the aforesaid date at 11:30 a.m. [State Record, Vol. 4 of 6].

[3] *See* Grand Jury Indictment filed in *State of Louisiana v. Kunta Gable, et al*, Case No.372-656"B" on the Docket of the Criminal District Court for the Parish of Orleans, noting that the jury returned a verdict of guilty of second degree murder against Kunta Gable, among others, on the aforesaid date at 11:30 a.m.; and Notice of Aggravating Circumstances filed by the State filed pursuant to Louisiana Code of Criminal Procedure Article 905.4 noting: "1. The offenders knowingly created a risk of death or great bodily harm to more than one person; 2. The offense was committed in an especially heinous, atrocious, or cruel manner; and 3. The offenders were engaged in the perpetration of a drive-by shooting." [State Record, Vol. 6 of 6].

of errors was due on or before June 14, 1996.[4]

On January 21, 1998, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner, Kunta Gable's conviction and sentence in an unpublished opinion.[5]   On February 6, 1998,

---

[4] *See* Notice of Appeal and May 17, 1996 Motion and Order of Appeal filed on behalf of Kunta Gable in *State of Louisiana v. Kunta Gable, et al,* Case No.372-656"B" on the Docket of the Criminal District Court for the Parish of Orleans [State Record, Vol. 6 of 6].

[5] *See State of Louisiana v. Kunta Gable, et al,* 96-KA-1920, 704 So.2d 995 (La. App. 4th Cir. 1/21/98)(Table of Louisiana Decisions Without Published Opinions) [State Record, Vol. 5 of 6]. The Louisiana Fourth Circuit synopsized the events of August 22, 1994, when at about 9:00 p.m. Rondell Santinac was found dead from gunshot wounds in a car in the Desire Housing Project in New Orleans Louisiana with spent casings from AK-47 rifle fire littering the scene. Raeford was in the company of his cousin, Santinac, on the night in question and they had dropped off Raeford's baby at the Desire Housing Project. Raeford testified at trial that they had borrowed a Chevrolet Chevette to drop off the baby and as they pulled out of a driveway after doing so, and before they could enter the street they saw a blue Chevrolet Beretta approaching. He testified that he could not see the driver, but he recognized Nelson and Kunta Gable. Raeford testified that he jumped out of the Chevette, and Gable and Nelson commenced firing at the Chevette with "AK" machine guns. Raeford saw that Santinac was hit in the head and fell forward and Raeford ran to his mother-in-laws's house. He told a neighbor, Nettie Graham to call the police and report that the perpetrators were driving a blue Beretta. Raeford remained at Graham's house till the police arrived, and then informed the police that Gable was wearing a black tank top and Nelson was wearing a white shirt with flowers on it. Raeford assumed that Juluke was the third man in the Beretta, since he had seen the three of them earlier, around 5:00 p.m. at the Iberville Housing Project. Raeford identified the Kunta Gable, et al, in a one-on-one encounter at the police station shortly after the crime. Gable had been apprehended shortly after the crime, riding in a Chevrolet Beretta, with the driver and another passenger, just as Raeford had described when the police had arrived at the scene. At about 9:45 when apprehended by the police, the three perpetrators were seated in the Beretta in the exact same positions that Raeford had described. Also, they were found in the Iberville Housing Project where Raeford had reported seeing them earlier that evening. Also Raeford had accurately described the clothes, that the "shooters" Gable and Nelson were wearing as they hung out of the window of the Beretta fired automatic weapons at the Chevette while driving by.. The Louisiana Fourth Circuit Court of Appeal held that the Raeford's identification of Kunta Gable, whom he knew and had seen earlier that day, was sufficiently reliable, and that the evidence was constitutionally sufficient to support his conviction, citing *Jackson v. Virginia*, 99 S.Ct. 2781 (1979). Assessing his ineffective assistance claim under the standard of *Strickland v. Washington*, 104 S.Ct. 2052 (1984), the Louisiana Fourth Circuit held that the alleged error fell within the ambit of trial strategy - that is, defense counsel's decision not to call the two officer's who first arrived at the scene (*i.e.*, Officer's Len Davis and Sammie Williams both of whom were later indicted for crimes which made the

petitioner filed a writ of review with the Louisiana Supreme Court.[6] On September 4, 1998, the Louisiana Supreme Court denied writs.[7]

Petitioner's conviction became final on September 4, 1998, when the Louisiana Supreme Court denied writs. The state record reveals that petitioner filed no application for post-conviction or other collateral relief until either October 14, 1999, more than 365 days after petitioner's conviction became final.[8] His federal habeas petition was not filed with this Court until October 31, 2000. The state record reveals no applications for post-conviction relief filed with the state courts which tolled the AEDPA's one year time limitation period which commenced to run on September 4, 1998 and expired on September 4, 1999.

Petitioner's October 14, 1999 application challenged his March 1, 1996 conviction on two grounds: (1) that the state trial judge incorrectly instructed the jury on the law of principals; and (2) the state trial court erred in his instruction regarding the required number of votes to reach a verdict. On November 10, 1999, the state trial court denied petitioner's application for relief stating that

---

national news). *Id.*

[6]*See* Letter from the Clerk of the Louisiana Supreme Court dated February 6, 1998, advising that pleadings in the matter entitled State of *Louisiana v. Kunta Gable* were received and filed on 2/6/98 [State Record, Volume 5 of 6].

[7]*See State of Louisiana v. Kunta Gable*, 98-KH-0706, 704 So.2d 995 (La. 9/4/98).

[8]*See* Kunta Gable's Application for Post-Conviction Relief, filed with the Clerk of the Criminal District Court for the Parish of Orleans, under docket number 377-656"B" bearing date time stamp of October 8, 1999 [State Record, Vol. 4 of 6]; and Affidavit of Petitioner, Kunta Gable swearing that a copy of his application for post-conviction relief was forwarded to the Orleans Parish District Attorney on October 5, 1999, signed by petitioner Kunta Gable [State Record, Vol. 4 of 6].

4

petitioner's claims were without merit.[9]  A little more than a month later on December 14, 1999, petitioner applied for supervisory writs to the Louisiana Supreme Court in connection with the state court's judgment denying post-conviction relief.  On January 10, 2000, the Louisiana Fourth Circuit Court of Appeal denied petitioner's writ application finding no error in the state trial court's November 12, 1999 ruling and stating that: (1) the state record failed to reveal a contemporaneous objection to the allegedly erroneous charges; and (2) the defendant, thus waived any error.[10]

More than a month later, on February 24, 2000, petitioner filed a writ application with the Louisiana Supreme Court challenging the denial of his habeas claims by the state trial court and the Louisiana Fourth Circuit Court of Appeal.[11]  The Louisiana Supreme Court denied writs on October 27, 2000.[12]

## ANALYSIS

The Antiterrorism and Death Act of 1996 (AEDPA), which comprehensively revised federal habeas legislation including 28 U.S.C. § 2254 and which became effective on April 24, 1996, applies to the instant § 2254 application, since it was filed after the Act's effective date.  Section 2244(d)(1)

---

[9]*See* November 10, 1999 Judgment filed in *State of Louisiana v. Kunta Gable and Leroy Nelson*, in the Criminal District Court for the Parish of Orleans, under docket no. 372-656"B" [State Record, Vol. 5 of 6].

[10]*See* January 10, 2000 ruling of the Louisiana Fourth Circuit Court of Appeal, denying writs in *State of Louisiana v. Kunta Gable and Leroy Nelson*, 99-K-3136, (La.App.4th Cir. 1/10/2000)[State Record, Vol. 4 of 6].

[11]*See* February 25, 2000 Letter from the Clerk of the Louisiana Supreme Court advising that his application was filed on February 24, 2000 and docketed under Louisiana Supreme Court No. 2000-KH-595, in the matter entitled *Kunta Gable v. State of Louisiana* [State Record, Vol. 4 of 6].

[12]*See State ex rel. Kunta Gable v. State of Louisiana*, 2000-KH-0595, 772 So.2d 118 (La. 10/27/2000).

of the amended statute requires a state petitioner to bring his federal habeas corpus claims within one year of the date his conviction became final. Petitioner's federal application was filed with this Court on October 31, 2000 pursuant to the "mailbox rule," and thus, the AEDPA governs the disposition of his federal habeas claims.

### EVIDENTIARY HEARING

Whether to hold an evidentiary hearing, is now a statutorily mandated determination under 18 U.S.C. § 2254(e)(2), which narrowly prescribes a federal habeas court's authority to conduct any such hearing. *See McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998). A habeas petitioner's entitlement to an evidentiary hearing, when he has failed to develop the factual basis of a claim, is restricted to narrow exceptions of subsection (e)(2) which provides as follows:

"(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
(A) the claim relies on -
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered by exercise of due diligence; and
(B) the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found the applicant guilty of the underlying offense." *See* 28 U. S. C. § 2254(e)(2).

These exceptions are applicable where the failure to develop a factual basis is the result of a decision or omission of the petitioner himself. Even in cases where the narrow restrictions of the aforesaid statutory provisions may apply, and petitioner's is not one of those cases, such would not guarantee an evidentiary hearing. Instead, it merely opens the door. The federal district court retains discretion over the decision to grant an evidentiary hearing, and the denial of an evidentiary hearing is reviewed under the abuse of discretion standard. *See Murphy v. Johnson*, 205 F.3d 809,

815 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 380 (2000).  To find abuse of discretion, a reviewing court must: (1) find that the State did not afford the petitioner a full and fair hearing; and (2) be convinced that if the allegations were proven true, petitioner would be entitled to relief. A full and fair hearing does not require live testimony and a paper hearing will suffice to afford such a hearing on factual issues underlying a petitioner's claims. *Murphy v. Johnson*, 205 F.3d at 815-16.

Petitioner's claims in the instant case do not derive from any new rule of law from the Supreme Court, or any hidden factual predicate which has come to the fore post-conviction. Whereas here the disposition of the petitioner's claims turns on the basis the AEDPA's time bar, and the facts regarding the State's objection is readily discernible from the record, no evidentiary hearing is required.

**TIMELINESS**

As previously mentioned, a review of the record shows that petitioner filed this federal habeas petition on October 31, 2000.. A federal habeas application must be filed in accordance with the requirements of Title 28, United States Code, § 2244(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1217.[13]  Generally, the AEDPA requires that a petitioner bring his § 2254 claims within one year of the date his conviction became final.

Specifically, under the amended Section 2244(d),

> (d)(1) a 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

---

[13] The AEDPA applies to this case since it was filed after the enactment of the AEDPA.

> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Also, subsection 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998).

Section 2244(d)(1) sets forth the general rule that a federal habeas petition must be filed within one year after the petitioner's conviction and/or sentence become final.  28 U.S.C. § 2244(d)(1)(A).  This case falls within the general rule.

Petitioner's conviction became final on September 4, 1998, the date that the Louisiana denied his writ application following the Louisiana Fourth Circuit's ruling affirming his conviction and sentence.  Therefore, any federal habeas petition must have been filed with this Court on or before September 4, 1999, unless the AEDPA's one-year time limitation period was tolled by a properly filed state application seeking post-conviction or other collateral relief.

The state record reveals that the petitioner filed no application for post-conviction relief with the state trial court or any state court until October 8, 1999, which was after the time for filing his federal habeas application had expired. Petitioner's application with this Court filed October 31,

2000 pursuant to the mailbox rule, is therefore untimely and should be dismissed as time-barred.

The State filed its response seeking dismissal on the basis the AEDPA's time-bar provision months ago, on February 5, 2001. Petitioner in the case at bar has asserted no justification for his failure to timely file his federal habeas corpus petition. Moreover, the record does not reveal any unconstitutional State action that impeded petitioner in filing his federal application. Also, the record in this case does not reveal any extraordinary circumstances beyond the petitioner's control that made it impossible for him to timely file a federal writ of habeas corpus. Petitioner may not rely on either his *pro se* status or any lack of skill in the law to excuse his delay. *See Felder v. Johnson* 204 F.3d 168, 171 (5th Cir. 2000). Finally, ignorance of the existence of the one-year limitations period does not serve as a basis for equitable tolling. *Id.*, at 171-73.

The time bar is ultimately the result of petitioner's own failure to diligently pursue his habeas claims in state court until more than a year after his conviction and sentence became final. Petitioner does not suggest that he is actually innocent and the state court record admits no such conclusion. Accordingly, and for all of the above and foregoing reasons,

**IT IS ORDERED** that petitioner's § 2254 application is **DENIED** and his federal habeas claims are **DISMISSED WITH PREJUDICE as TIME-BARRED.**

New Orleans, Louisiana, this 12th day of June, 2001.

_____
UNITED STATES DISTRICT JUDGE